**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**PAUL CHILDRESS**                                                                 **PLAINTIFF**

**VS.**                                **CASE NO. 3:15CV00146 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,
   Social Security Administration**                             **DEFENDANT**

**ORDER**

Plaintiff Paul Childress ("Childress") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny his claim for Supplemental Security Income ("SSI"). Childress contends the Administrative Law Judge ("ALJ") erred in: (1) analyzing Childress' credibility; (2) in finding Childress could perform light work; and (3) formulating hypothetical questions which were posed to the vocational expert. The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on October 16, 2013. The Court has carefully reviewed the record to determine whether there is substantial evidence to support Colvin's decision. 42 U.S.C. § 405(g).

    Childress was 45 years old at the time of the administrative hearing. He testified he could read and write and do basic math. He stated he finished the 11th grade and did not obtain a GED. He lives with his girlfriend, his two sons (ages 10 and 18), and his girlfriend's father. Childress said he has not worked since 2002 due to dizziness, chest pains, shortness of breath, and leg, ankle, and hip problems. He stated he takes nitroglycerin pills about 15 times a month and his "chest is stiff."

(Tr. 28). He noted no side effects from medications. Childress indicated he helps around the house with sweeping, mopping, and mowing the lawn with a riding mower. He reads, watches television, uses the computer, and tries "to have fun with my kids, help them with their homework." Childress acknowledged that his treating physicians have not restricted his activities. When asked if he could work five days a week eight hours a day, he replied, "Probably." (Tr. 35). He stated he could not run or jump, could not stand for a long period, and could carry 20 pounds. Mentally, Childress described himself as stable and slow to get upset. He testified to headaches, soreness and numbness in feet, and normal allergies. Finally, he stated he did not drink, smoke, or use illegal drugs. (Tr. 25-44).

**Credibility determination:** The ALJ addressed Childress' credibility, citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which provides the following guidance on issues of credibility:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>     1. the claimant's daily activities;
>
>     2. the duration, frequency and intensity of the pain;
>
>     3. precipitating and aggravating factors;
>
>     4. dosage, effectiveness and side effects of medication;
>
>     5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322 (emphasis in original).

The ALJ thoroughly discussed the objective medical evidence, finding Childress has severe impairments of coronary artery disease, status post coronary artery bypass graft, type II non-insulin dependent diabetes, peripheral neuropathy, hypertension, and obesity. The ALJ's review of objective medical evidence reflected Childress was seen infrequently by medical care providers, that no restrictions were imposed, and typically medical assessments were normal. For example, Childress' cardiologist, Dr. McKee, diagnosed coronary artery disease in 2012 and sought additional testing to see if Childress needed an automatic implantable cardioverter-defibrillator. Additional testing showed the device was not needed. (Tr. 357-359). In addition, physical examinations by treating physician Wood were normal in September 2011 and May 2013. (Tr. 315-319, 361-365). In summary, the ALJ correctly cited the objective medical evidence to support the credibility finding.

Childress contends the ALJ only discussed the objective medical evidence and failed to address any other *Polaski* factors. As a result, Childress argues the case must be remanded. While we agree the ALJ could have performed a more thorough analysis, we find the credibility determination is supported by substantial evidence. The ALJ did address some of the remaining *Polaski* factors, albeit briefly. For example, Childress' prior work history was considered. The ALJ noted Childress had performed no work which amounted to substantial gainful activity, and he last worked in 2002. (Tr. 12, 16). In addition, the ALJ recited Childress' daily activities, as he testified to them at the administrative hearing. (Tr. 16). Finally, although the ALJ did not specifically address any side effects of medications, this was not necessary as Childress testified to no side effects. (Tr. 29).

Even conceding that an ALJ is not required to discuss each *Polaski* factor, the ALJ's credibility analysis could have been more thorough[1]. *See Halverson v. Astrue*, 600 F.3d 922 (8th Cir. 2010). However, we find substantial evidence supports the ALJ's conclusion. This case is unusual, in that the credibility of Childress' credibility was not dramatically discounted – he stated he "probably" could work a full time job. (Tr. 35). There is no merit to the first claim of Childress.

**Light work[2] finding by ALJ:** The ALJ determined Childress had the residual functional capacity ("RFC") to perform light work except that he could never be exposed to dangerous hazards such as unprotected heights and moving machinery due to coronary artery disease and dizziness, and he could never be exposed to fumes, odors, gasses or extreme heat. (Tr. 15).

Childress concedes that none of his physicians limited his ability to work. However, he urges the ALJ should have sought clarification from either treating physicians or a consultative examiner to affirmatively opine that Childress could perform light work. We disagree.

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Childress' own testimony suggests he thought himself capable of working. The infrequent treatment sought by Childress, the typically normal findings by his medical care providers, and the absence

---

[1] The ALJ did not, but could have, noted there were large periods of time during which Childress sought no treatment. These gaps, such as the gap from March 2009 to September 2011, detract from Childress' credibility.

[2] *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Childress testified to an ability to lift 20 pounds. (Tr. 35).

4

of any restrictions all strongly support the ALJ's RFC determination. Childress claims the ALJ relied too heavily upon the opinion of the state agency physician who opined he could perform the full range of light work. The record refutes this assertion. While the ALJ assigned "some weight" to the state agency physician, it is clear that the RFC determination did not hinge on the state agency opinion. (Tr. 17). Rather, the ALJ was influenced more by the overall medical records of the treating physicians, with the ALJ observing "that none of the claimant's treatment providers ever documented that the claimant was disabled or had limitations or restrictions in his ability to work due to his impairments or symptoms stemming from those impairments." (Tr. 18).

In summary, the RFC finding of an ability to perform light work with restrictions is well supported by substantial evidence.

**Hypothetical questions posed to the vocational expert:** The ALJ posed a hypothetical question to the vocational expert which mirrored the RFC determination which we have already discussed. (Tr. 40). The vocational expert testified that such a person could perform work in the national economy, citing the jobs of hand packer and assembler as examples. (Tr. 40). Childress faults the ALJ for failing to include allowances for his chest pain or his obesity in the hypothetical question.

The overriding question is whether the hypothetical question adequately described all of Childress' limitations. Substantial evidence supports the ALJ's formulation of the hypothetical question. We have already discussed the credibility and RFC determinations reached by the ALJ. These conclusions formed the foundation for the hypothetical question. The ALJ was not required to include Childress' chest pain in the question. Although Childress testified to chest pain, the ALJ was not required to accept the subjective statements as fact, and he did not do so. The ALJ's

decision is supported by the record. Childress did not allege obesity as a disabling impairment, nor did he testify to how his obesity restricts him from working. *See Thompson v. Astrue*, 226 Fed.Appx. 617 (8th Cir. 2007) (5'8" 320 pound claimant did not allege his weight interfered with his ability to work). The ALJ explicitly stated he "gave the claimant the benefit of the doubt" in finding his obesity and other impairments were severe. The ALJ need not have included obesity in the hypothetical question when he validly concluded Childress' obesity did not limit his ability to perform the work described in the hypothetical question.

In summary, substantial evidence supports the credibility and RFC determinations reached by the ALJ. It follows that the hypothetical question based upon these conclusions is also supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and Childress' complaint is dismissed with prejudice.

IT IS SO ORDERED this 25th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE